IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHAWN H. and CHRISTINE C., )
individually and as parents and legal )
guardians of S.H., a minor; and S.H., )
individually and in his own right, )
) Civil Action No. 2:12-cv-1783
Plaintiffs, )
)
v. ) Judge Mark R. Hornak
)
DEANNE WIENK, in her individual and )
official capacity as a teacher; FRANK )
BERDAR, in his individual and official )
capacity as the principal of Cardale )
Elementary School; PHILIP SAVINI, JR., )
in his individual and official capacity as )
District Superintendent of BROWNSVILLE )
AREA SCHOOL DISTRICT; and )
INTERMEDIATE UNIT 1, )
)
Defendants. )

## OPINION

**Mark R. Hornak, United States District Judge**

This is a § 1983 case stemming from an alleged assault on S.H., the minor Plaintiff, by a teacher, Defendant Deanne Wienk ("Wienk"). Plaintiffs allege that various officials and the school district (including the Intermediate Unit) violated S.H.'s Federal constitutional rights and committed state law torts. Pending before the Court are two motions to dismiss, the first filed by Defendants Frank Berdar, Philip Savini, Jr., and Brownsville Area School District (ECF No. 13); and the second filed by Defendant Intermediate Unit 1 (ECF No. 17).[1] Defendants seek to have all claims asserted against them dismissed. The Court has considered the Plaintiffs' Complaint, the pending motions, the briefs in support of and in opposition to these motions.

---

[1] Defendant Wienk has not moved for dismissal. Thus, for purposes of this Opinion, the moving Defendants are referred to as "Defendants".

(ECF Nos. 1, 13-14, 17-18, 21). The matters are ripe for disposition, and for the reasons that follow, the motions will be granted, without prejudice as explained in this Opinion.[2]

## I. BACKGROUND

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in Plaintiff's favor. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purpose of the disposition of Defendants' Motions, the essential facts are as follows.

Shawn H. and Christine H. are the parents of S.H., the minor Plaintiff, who attended Cardale Elementary School located in the Brownsville Area School District. (ECF No. 1 at ¶¶ 6-7). Defendant Wienk was a teacher at Cardale Elementary School, and is believed to be an employee of Defendant Intermediate Unit 1. *Id.* at ¶ 7. Defendant Frank Berdar ("Berdar") was the principal at Cardale Elementary, and Defendant Philip Savini, Jr. ("Savini") was the Superintendent of the School District. *Id.* at ¶¶ 8-9.

On or about May 9, 2012, S.H. was a fifth grade student at Cardale Elementary School. *Id.* at ¶ 13. On that date, S.H. was waiting in line in the hallway outside of the cafeteria, having just completed his lunch period. *Id.* at ¶ 14. Wienk was acting as the hall supervisor, supervising the students while in the hallway and then leading them back to their respective classrooms. *Id.* at ¶ 15. Wienk allegedly instructed an unnamed student to be quiet and form an orderly line with the rest of the class. *Id.* at ¶ 16. S.H., a friend of the unnamed student, also instructed the student to form an orderly line so the class could return to their homeroom. *Id.* at ¶ 17. According to the Plaintiffs, "without warning or provocation," Wienk immediately and

---

[2] This matter was stayed during the pendency of state criminal proceedings against Wienk. The Court was advised that those matters had been sufficiently resolved via a state court diversionary program so as to permit this case to go forward.

2

quickly "charged" at S.H., and proceeded to "violently choke S.H. with both of her hands and violently slam[med] S.H.'s head into the brick/stone wall in the hallway." *Id.* at ¶ 18. Wienk choked S.H. for "a period of time," and ultimately had to be forcibly removed from S.H. by two of S.H.'s friends and classmates. *Id.* at ¶ 19.

S.H. was in a state of shock after the incident, and returned to his homeroom visibly shaken with hand and/or finger marks around his neck. *Id.* at ¶ 20. S.H.'s homeroom teacher observed the marks on S.H.'s neck and was made aware of the incident. *Id.* at ¶ 22. S.H. was taken to the nurse's and principal's office by another student, but Berdar was not on the premises at that time or when the incident happened. *Id.* at ¶¶ 22-24. S.H. was allowed to call his parents, and he was picked up by his father, Shawn H. *Id.* at ¶¶ 25-26. Upon learning what happened, Shawn H. returned to the school and met with Berdar, and completed a complaint form provided by the school. *Id.* at ¶¶ 27-28.

S.H.'s pain continued to increase as the night wore on, and he began experiencing symptoms of a serious concussion and closed-head injury. *Id.* at ¶ 29. He was extremely tired and fell asleep in his parents' car, he became nauseous and vomited when field lights came on at his brother's baseball game, and his neck was stiff, sore and painful. *Id.* at 29. S.H. was admitted to the hospital for testing and observation that night. *Id.* at ¶ 30. Plaintiffs' allege that S.H. sustained physical, emotional and psychological injuries, and requires continued and prolonged medical treatment and therapy for post-concussion syndrome and cervical neck sprain. *Id.* at ¶¶ 31-32. S.H. also continues to suffer from depression, anxiety and nightmares as a result of the incident, requiring him to be homeschooled because Defendants failed to remove Wienk from teaching after the incident. *Id.* at ¶ 33.

On December 6, 2012, Plaintiffs filed suit in this Court against Defendants, alleging that their actions violated S.H.'s Fifth and Fourteenth Amendment rights, and constituted common

law torts, which they have enumerated in the five (5) Counts of the Complaint. *Id.* at ¶¶ 36-77. Counts I and V are asserted against Wienk, and therefore are not considered here. In Counts II and III, Plaintiffs allege that Defendants' actions violated S.H.'s Fifth and Fourteenth Amendment substantive due process rights. *Id.* at ¶¶ 43-65.[3] Count IV alleges a state law intentional infliction of emotional distress claim against Defendants Berdar and Savini. *Id.* at ¶ 66-71.[4]

## II. DISCUSSION

### A. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also* Fed. R. Civ. P. 10(c) ("a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts that could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

---

[3] Plaintiffs, Shawn H. and Christine C., concede that they are not asserting an independent cause of action for the injuries allegedly sustained by S.H., their minor son. (ECF No. 21 at p. 3). They are only seeking reimbursement for the medical expenses they have incurred in treating S.H.'s injuries related to the incident. *Id.* at p. 12.

[4] Plaintiffs, in their Brief in Opposition, voluntarily dismissed this state law cause of action as to Defendants Brownsville Area School District and Intermediate Unit 1. (ECF No. 21 at p. 4).

B. **Section 1983 claims**

Counts II and III are brought pursuant to 42 U.S.C. § 1983, which provides a private right of action to:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [U.S.] Constitution and laws.

42 U.S.C. § 1983. Section 1983 does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To prevail in a claim brought via § 1983, a plaintiff must prove that he or she: (a) suffered the deprivation of a right secured by the United States Constitution or federal law (b) by a person acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

It is undisputed that the named Defendants are state actors for the purpose of § 1983. Accordingly, the focus turns to Defendants' first argument that the allegations in the Complaint, even if true, do not plausibly support the existence of a constitutional tort. In their Complaint, Plaintiffs' assert a substantive due process claim based upon the allegation that Wienk violated S.H.'s right to bodily integrity in violation of the Fourteenth Amendment of the United States Constitution when Wienk allegedly choked and head-slammed S.H. The Fourteenth Amendment prohibits the State from depriving an individual of life, liberty or property without due process of law. U.S. Const. Amend. XIV.[5]

In order to establish a constitutional violation in a school corporal punishment case, the conduct alleged must "properly be characterized as arbitrary, or conscience shocking ... ."

---

[5] The Court analyzes Plaintiffs' claim under the Fourteenth, not Fifth, Amendment because the Fifth Amendment's protections only apply to actions of the federal government. *Rittenhouse Entertm't, Inc. v. City of Wilkes–Barre*, 861 F.Supp.2d 470, 485–86 (M.D.Pa. 2012) (citing *B & G Const. Co., Inc. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011)).

*County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). To "avoid conflating the various elements of the shocks the conscience test into a vague impressionistic standard," our Court of Appeals in *Gottlieb v. Laurel Highlands School Dist.*, 272 F.3d 168 (3d Cir. 2001) identified the following factors as relevant to a determination as to whether corporal punishment by a state actor violates substantive due process:

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

*Gottlieb*, 272 F.3d at 173. Here, Plaintiffs allege that after Wienk instructed an unnamed student to be quiet and form an orderly line, S.H. similarly repeated those instructions to the unnamed student. At that point, Wienk allegedly charged at S.H. and violently choked him with both of her hands and violently slammed his head into the brick/stone wall without warning or provocation, and ultimately had to be forcibly removed by S.H.'s classmates.

Crediting these allegations, the Court finds that Wienk's actions could easily be construed as wholly unnecessary and not as an attempt to serve any pedagogical objectives with respect to S.H., especially since the factual allegations suggest he was assisting Wienk in her attempts at organizing his classmates, and not behaving in an unruly or disruptive fashion. Even if Wienk was of the view that S.H. was unruly or disruptive, choking a student and slamming his head against a wall could easily be found by a fact finder as excessive under the circumstances alleged in the Complaint. Nor is the Court of the view that choking a fifth grade student and slamming his head against the wall would in any fashion be any sort of good faith effort to restore order or maintain discipline.

Finally, Plaintiffs have alleged sufficient facts supporting a finding that S.H. suffered serious injury as a result of the alleged use of excessive force. Plaintiffs allege that S.H.

6

experienced symptoms of a serious concussion and closed-head injury, requiring admission to the hospital for testing and observation, and sustained emotional and psychological injury as well. Plaintiffs further allege that S.H. continues to require medical treatment and therapy for post-concussion syndrome and cervical neck sprain, and continues to experience depression, anxiety and nightmares as a result of the incident.

At this stage in the proceedings, Plaintiffs' averments combine to support a plausible inference that Wienk's conduct, when viewed against the backdrop of the *Gottlieb* test, "amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Gottlieb*, 272 F.3d at 173 (citing *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)). Accordingly, Defendants' Motions to Dismiss on this basis would be denied, but further analysis is necessary to resolve those Motions.

Plaintiffs first seek to hold the Brownsville Area School District, the Intermediate Unit I, and Berdar and Savini in their official capacities,[6] liable for this alleged constitutional tort under a municipal liability theory.[7] A school district may be liable in a § 1983 action for the violation of an individual's federal statutory or constitutional rights when it implements an official policy or custom that results in a constitutional deprivation. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). A school district and its officials cannot, however, be held liable solely for the

---

[6] Plaintiffs have sued Berdar and Savini in their individual and official capacities. (ECF No. 1 at ¶¶ 8-9). Asserting a claim against a government employee in his or her official capacity is simply another way of asserting a claim against a public entity. *Mitros v. Borough of Glenolden*, 170 F. Supp. 2d 504, 506 (E.D.Pa. 2001). Therefore, the Court will address the official capacity and school district liability claims as one.

[7] Plaintiffs, in their Brief in Opposition, concede that they are not seeking to impose liability upon the Defendants under a vicarious liability theory, or under a special relationship or state created danger theory. (ECF No. 21 at p. 3). The Court has confined its analysis accordingly.

acts of its employees on a *respondeat superior* theory. *Id.* at 691; *see also Barkes v. First Correctional Medical, Inc.*, __ F.3d __, __, 2014 WL 4401051 at *6 (3d Cir. Sept. 5, 2014) ("It is well-recognized that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.'") (citations omitted).

Proving a government policy or custom can be accomplished in a number of different ways. *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990). "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. *Id.* (citing *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989)). To prove the existence of an unconstitutional custom, it is sufficient to establish "that policymakers were aware of similar conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [the plaintiff's] injury." *Bielevicz*, 915 F.2d at 851.

Thus, in order to assert a claim for municipal liability under § 1983, Plaintiffs must plausibly plead the existence of a municipal policy or custom, and that said policy or custom caused the alleged constitutional violation. *Monell*, 436 U.S. at 694; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009). Here, Plaintiffs' claims against these Defendants stand on the following allegations in the Complaint:

> 46. At all times relevant hereto, Defendants Berdar and Savani, jointly and/or severally, had a responsibility to train, oversee and supervise Defendant Wienk.

8

47. At all times relevant hereto, Defendants Berdar and Savini had a responsibility to investigate any allegations of student abuse and/or other allegations of improper, inappropriate, unprofessional and/or illegal contacts between Brownsville Area School District staff and any student, including S.H.

48. Prior to the occurrence of the subject incident on May 9, 2012, Defendants Berdar and Savini had received notice that Defendant Wienk was abusing and/or acting improperly, inappropriately, unprofessionally and/or illegally with other students at Cardale Elementary School.

49. Specifically, Defendants Berdar and Savini were informed that Defendant Wienk repeatedly placed her hands on the buttocks of minor-females at Cardale Elementary School and also placed her hands on the shoulders and backs of minor-males at Cardale Elementary School.

50. At all times relevant hereto, Defendants Berdar and Savini, state actors acting under color of state law, subjected Plaintiff S.H. to violations of his civil rights, including the rights set forth above, when they failed to properly train, oversee and supervise Defendant Wienk, and failed to investigate previous claims of student abuse at the hands of Defendant Wienk.

51. Defendants Berdar and Savini acted with deliberate indifference to the civil rights of S.H., and other students, when Defendants Berdar and Savini failed to investigate, reprimand, report and/or terminate Defendant Wienk after receiving previous allegations of student abuse. These failures created, established and furthered a policy, practice and custom which was a direct and proximate cause of the civil rights violations incurred by Plaintiff S.H.

...

61. At all times relevant hereto, Defendants Brownsville Area School District and Intermediate Unit 1, through its employees, agents and/or representatives, were aware of the allegations against Defendant Wienk, and failed to act so as to protect its students, including Plaintiff S.H.

62. Defendants Brownsville Area School District and Intermediate Unit 1 acted with deliberate indifference to the civil rights of S.H., and other students, when they, through their employees, agents and/or representatives, failed to investigate, reprimand, report and/or terminate Defendant Wienk after receiving previous allegations of student abuse. These failures created, established and furthered a policy, practice and custom which was a direct and proximate cause of the civil rights violations incurred by Plaintiff S.H.

(ECF No. 1 at ¶¶ 44-51, 61-62). Plaintiffs have not alleged the existence of an official expressed policy, proclamation or edict. The Court construes, and the Plaintiffs argue, that the factual

allegations are aimed at suggesting knowledge of a pattern of similar incidents and an inadequate response to those incidents by the Defendants, thus demonstrating the plausible existence of custom through acquiescence. (ECF No. 21 at pp. 8-10).

Plaintiffs' allegations fall short of meeting the burden set forth in *Twombly*, *Iqbal*, and *Fowler* for stating a plausible claim for relief under *Monell*. In *Thomas v. Bd. of Educ. of W. Greene Sch. Dist.*, 467 F. Supp. 2d 483 (W.D.Pa. 2006), a teacher struck a student in the chest with a closed fist over a confrontation about missing homework and the student suffered minor bruising and tenderness. *Thomas*, 467 F. Supp. 2d at 487. The plaintiffs asserted a § 1983 claim against the Board and District, contending that they should have been or were aware of the teacher's propensity to strike students, and that by failing to reign in the teacher's behavior, they condoned his behavior. *Id.* In support, plaintiffs pointed to evidence of an event twenty (20) years prior in which the teacher forced a student into a chair after the student refused to sit down, and three incidents relating to the consumption or distribution of alcohol. *Id.* at p. 493. Defendants argued that these incidents demonstrated that the administration knew the teacher had a history of abusive behavior towards students. *Id.*

The court first held that the incidents involving alcohol were irrelevant and had no logical connection to the issue of whether the District and Board were aware of inappropriate corporal punishment by the teacher. *Id.* at 493. With respect to the remaining conduct, the court reasoned:

> Even if plaintiffs' description of the pushing incident is accurate, it would not serve to place the administration on notice that Crouse had a propensity to infringe the civil liberties of his students. The pushing incident, evaluated by the standards just articulated, certainly does not rise to the level of a substantive due process violation, and so could not serve to warn the Board or District that the substantive due process rights of students were in jeopardy. Furthermore, even if it is assumed that pushing a student back in his chair is "a brutal and inhumane abuse of official power literally shocking to the conscience", one event, twenty years ago, does not establish a pattern or custom. As the plaintiffs have

10

insufficient evidence to convince a reasonable fact finder that the Board or District either acquiesced in or condoned a pattern of abusive behavior on the part of Crouse, they cannot demonstrate that either of these defendants acted with deliberate disregard for the rights of students. Summary Judgment on behalf of the Board and District is appropriate.

*Thomas*, 467 F. Supp. 2d at 494.

Although *Thomas* arose in the context of a motion for summary judgment, its reasoning is instructive here. Plaintiffs' Complaint in the instant case lacks any specificity concerning a pattern (or even episode) of similar corporal punishment incidents that would place Defendants on notice that Wienk had violent propensities. Plaintiffs' allegations in paragraph 48 of the Complaint alleging that Defendants had notice that Wienk was abusing, acting improperly, inappropriately, unprofessionally and/or illegally are wholly conclusory and do not contain sufficient (or in reality, any) factual matter showing that the claim is "facially plausible." *Fowler*, 578 F.3d at 210. "[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss." *Id.*

Plaintiffs' averments with respect to the specifically alleged conduct in paragraph 49 fare no better. All that these allegations establish is that Wienk had two types of physical contact with other students, some apparently inappropriately, although not of the same ilk as in this case (placing her hands on the buttocks of female students), and some of a more benign nature (placing her hands on the shoulders and backs of male students). Similar to *Thomas*, nothing about this conduct, even if true, would alert Defendants (or anyone else standing in their shoes) that Wienk would engage in the choking/head slamming conduct allegedly perpetrated upon S.H. in this case.

In their Response in Opposition to the Defendants' Motions, Plaintiffs argue that Defendants were aware that "Wienk acted inappropriately towards students. It was common knowledge *amongst teachers and students* that Deanne Wienk was physically and sexually

11

aggressive towards students. There were complaints that Deanne Wienk inappropriately touched female students, and teachers had observed that she would aggressively grab the necks and shoulders of male students." (ECF No. 21 at pp. 8-9) (emphasis added). While this description is somewhat more informative with respect to the type of conduct Wienk allegedly engaged in, it is axiomatic that a complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Comm. of Pa. ex. rel Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1984)). Moreover, this explication merely argues that the inappropriate conduct was common knowledge among "teachers" and "students" and *not* the alleged policymaker/Defendants. In short, the facts as pled do not satisfy the "rigorous standards of culpability and causation" required to state a claim for municipal liability. *McTernan*, 564 F.3d at 658-59 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Insofar as Plaintiffs' claims against Defendants Berdar and Savini individually are concerned, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct.[8] *Barkes*, 2014 WL 4401051 at *6 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Typically, the plaintiff must show, for example, that the supervisor directed the wrongdoing or actually knew of the wrongdoing and acquiesced in it. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Supervisory liability may also attach where the supervisor "with deliberate indifference to the consequences, established and maintained a

---

[8] Parenthetically, we observe that Plaintiffs in their opposition briefs failed to address the adequacy of their allegations with respect to a supervisory liability claim, focusing instead on the merits of the *Monell* claim.

policy, practice or custom which directly caused [the] constitutional harm." *Barkes*, 2014 WL 4401051 at *6 (quoting *A.M.*, 372 F.3d at 586, quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Failure to supervise and failure to train claims are "considered a subcategory of policy or practice liability." *Barkes*, 2014 WL 4401051 at *6. "Failing to adequately supervise, monitor, or train teachers 'can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations.'" *Thomas v. Bd. of Educ. of Brandywine Sch. Dist.*, 759 F. Supp. 2d 477, 492 (D.Del. 2010) (quoting *Berg v. Cnty. Of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)); *see also Connick v. Thompson*, __U.S.__, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (noting that a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train) (citing *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).[9]

When viewed in connection with the above standards, it is clear that Plaintiffs have failed to sufficiently allege a supervisory liability claim. There are no facts pled in the Complaint that would indicate Berdar or Savini had any personal involvement in the incident or that they directed, or actually knew of and acquiesced in, the alleged violations of S.H.'s constitutional rights. Moreover, for the reasons previously discussed in connection with Plaintiffs' *Monell* claim, Plaintiffs have failed to allege sufficient facts that Berdar and Savini had notice of a prior practice of unconstitutional behavior of a similar conscience-shocking nature on the part of

---

[9] There was previously uncertainty as to the viability and scope of supervisory liability after *Iqbal*. *Santiago v. Warminster Twp.* 629 F.3d 121, 130 n.8 (3d Cir. 2010) (citing cases). In *Barkes*, the United States Court of Appeals for the Third Circuit considered whether and to what extent its precedent on supervisory liability had been altered in the Eight Amendment context by *Iqbal*. *Barkes*, 2014 WL 4401051 at *6. Following a discussion of its previous holding in *Sample v. Dieks*, 885 F.2d 1099 (3d Cir. 1989), and other circuit court decisions, the Third Circuit held that the *Sample* standard for imposing supervisory liability based on an Eighth Amendment violation was consistent with *Iqbal*. *Id.* at *6-9. The court stated, however, that "[w]e leave for another day the question whether and under what circumstances a claim for supervisory liability derived from a violation of a different constitutional provision remains valid." *Id.* at *9. Accordingly, we continue to recognize the existence of supervisory liability in this context.

13

Wienk. Finally, to the extent Plaintiffs are relying on a failure to supervise/train theory of liability, the Complaint is devoid of any factual allegations with respect to a pattern of similar constitutional violations. Accordingly, dismissal of this claim is appropriate as well, and Defendants' Motions will therefore be granted as to Counts II and III.

### C. State law claim

Count IV is a claim for intentional infliction of emotional distress asserted against Defendants Berdar and Savini. Defendants argue they are immune from this claim under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. § 8541, and that this claim should be dismissed. The PSTCA provides that "[n]o local agency shall be held liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S.A. § 8541. State officials are protected by the PSTCA as well. However, a willful misconduct exception exists: a public official does not receive immunity when his action "constituted a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S.A. § 8550. Under this provision, public officials can be held liable for intentional torts, such as intentional infliction of emotional distress.

Here, it is undisputed that these Defendants did not participate or have any personal involvement in the incident. To the extent that this claim is asserted for the purpose of imposing liability upon these Defendants based upon their alleged *Monell* liability and/or upon an alleged failure to train/supervise theory, it follows that this claim fails for the same reasons discussed in connection with those claims. Accordingly, Count IV will also be dismissed for failure to state a facially plausible state law claim against Defendants Berdar and Savini upon which relief may be granted.

### D. Next Steps

A plaintiff may be granted the opportunity to amend his complaint unless amendment would be inequitable or futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Here, the Court conducted two separate status conferences. The sufficiency of the allegations of Plaintiffs' Complaint were discussed at each. On November 13, 2013, the Court observed that the allegations of the Complaint with respect to the Defendants' notice did not include much specificity, and Plaintiffs' counsel conceded that the allegations were "lacking" in this regard. (ECF No. 30 at pp. 7-10). The Court subsequently entered an Order granting Plaintiffs leave to amend their Complaint, at their election, on or before February 5, 2014. (Text Order entry dated January 21, 2014). Thereafter, Plaintiffs informed the Court that they would not be filing an Amended Complaint, and requested that the Court rule on the pending motions to dismiss. (ECF No. 24 at ¶¶ 3-4).

Similarly, on January 27, 2014, the Court held a second status conference (ECF No. 28), and subsequently entered a revised scheduling Order, wherein the Plaintiffs were granted leave until February 20, 2014 in which to file an amended Complaint, at their election. (Text Scheduling Order dated January 27, 2014). Again, Plaintiffs declined to do so, although the Court notes that their counsel alluded to a belief that the individual Defendants here were aware at some level of some sort of more analogous bad conduct by Defendant Wienk. Why they would not simply state all that they believed they knew in an Amended Complaint remains a mystery to the Court.[10]

---

[10] In modern federal civil practice, there is rarely a true "Perry Mason/Absence of Malice" moment in which a lawyer springs a stunning, heart-stopping surprise on the other side. Thus, the pleading obligation of the *Twombly/Iqbal* doctrine is entirely consistent with the principles of disclosure inherent in the Federal Rules. A rule requiring the Plaintiffs to deal whatever cards they have now, and to deal them face up, is entirely appropriate.

Given this history, the Court would be strongly of the view that it would be both inequitable and inappropriate to allow an opportunity to amend now. Whether it was ever valid or not, certainly post-*Iqbal*, a litigation theory of "where we think there may be smoke, there just might be fire" is simply not the operative rule of law. The Court has provided Plaintiffs with several opportunities to amend their Complaint, and they have steadfastly adhered to the position that the allegations as pled are sufficient to state a claim upon which relief can be granted, or in the alternative, that if only given discovery, they could now come up with the facts they have intimated they think might probably exist, but which they have not disclosed.

All parties in this case are represented by experienced counsel. There are no *pro se* litigants here. The Court had advised all counsel that it appeared to the Court that the allegations of the Complaint likely have fallen short of the *Iqbal* bar, and has twice granted Plaintiffs leave to amend on its own Motion. Pursuant to Fed. R. Civ. P. 15(a), the Plaintiffs also had a right to amend as of course once the Motions to Dismiss were filed. They elected to not do so. Plaintiffs have not sought leave to amend, and have in fact reaffirmed on the record that they stood by the allegations of the Complaint. That sort of reasoned litigation judgment lies at the heart of a lawyer's representation of their client, and should be respected by a court.

That all said, at the first conference with counsel (November 13, 2013), the Court did state on the record that if upon ruling on the Motions to Dismiss, they were granted on the basis that the Plaintiffs had failed to clear the *Iqbal* bar, the Court would feel "duty bound" to allow leave to amend. (ECF No. 30 at p. 11). Upon further review, that statement by the Court was unnecessarily generous, at least in the circumstances of this case as detailed above. Why? While our Court of Appeals has directed the district courts to apply a somewhat generous rule in permitting amendments, *see Grayson*, 293 F.3d at 108-09; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007), any such amendment opportunity

has been repeatedly placed upon the table for the Plaintiffs to pick up. They have passed on it, repeatedly. Any case law duty imposed on the Court to allow an amendment has been fulfilled. At the same time, all counsel should be permitted to rely on what the Court says on the record in conferences with the Court. Fairness requires no less. Therefore, for that reason alone, the dismissal of claims as set forth in this Opinion will be without prejudice, and Plaintiffs will be given one final opportunity to file an Amended Complaint, on or before October 6, 2014. Should they fail to do so, then this dismissal will be converted to a dismissal with prejudice without further notice to the parties. Plaintiffs are advised that they must come forward and plead their claims with legally and factually sufficient plausible allegations to fulfill the legal standards applicable here, now or not at all.

### III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Frank Berdar, Philip Savini, Jr., and Brownsville Area School District (ECF No. 13) is granted, and the Motion to Dismiss filed by Defendant Intermediate Unit 1 (ECF No. 17) is granted. Counts II, III and IV are dismissed without prejudice. An appropriate Order will follow.

_____
Mark R. Hornak
United States District Judge

Dated: September 23, 2014

cc: All counsel of record